# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## DOCKET NO. 3:06-CV-270-W

| | |
|---|---|
| JONATHAN BAILEY ASSOCIATES, Appellant, | ) ) ) |
| vs. | ) ) ) ORDER |
| HLM DESIGN, INC., et al., Appellees. | ) ) ) ) |

THIS MATTER comes before the Court on appeal from an Order of United States Bankruptcy Judge George R. Hodges. The Court previously set this matter for oral argument to take place on 22 March 2007, but upon further review of the record the Court now determines that the facts and legal contentions are adequately presented in the written briefs and that argument would not aid the decisional process. However, the Court does NOT discontinue the 22 March hearing and reserves the scheduled time to address some ancillary matters described below.

## BACKGROUND

On 2 June 2005, HLM Design, Inc. ("HLM") filed a motion in the bankruptcy court seeking to abandon and assign to Webster Business Credit Corp. ("Webster"), a secured lender, two accounts receivable, one of which was owed by Jonathan Bailey Associates ("JBA"). The JBA Receivable was secured by a duly filed Florida construction lien. No objection to the abandonment motion was filed, and an Order granting the motion was entered on June 30, 2005.

On 27 December 2005, Webster brought suit against JBA seeking to foreclose on the construction lien in the amount of the receivable it had been assigned. Both Webster and JBA subsequently came under the apprehension that under Florida law, Webster could not step into

HLM's shoes and prosecute the foreclosure action absent an express assignment of the Florida construction lien from HLM to Webster.

Immediately thereafter, on 15 May 2006, HLM filed a "Motion Seeking Clarification, Effective *Nunc Pro Tunc*, of Order Deeming Certain Accounts Receivable and Related Assets Abandoned and Assigned to Webster Business Credit Corporation." The motion sought an order clarifying that the term "Receivables," as defined in the Abandonment Motion, "includes the express account receivable . . . any and all lien rights or claims of lien related to the Receivables, and any other right, title, security, and interest (including guaranties) which would allow [Webster], as a secured creditor of the Debtors, to maximize its recovery on the Receivables." JBA objected to the motion to clarify, arguing that the original order, construed together with the abandonment motion, was clear and unambiguous in specifying what property was abandoned and assigned to Webster and that no mention of any lien rights or security for the receivables was mentioned. In addition, JBA argued that *nunc pro tunc* relief was inappropriate because the Abandonment Motion was not originally intended to affect the abandonment an assignment of any lien rights.

At hearing on the motion, the bankruptcy court found that HLM and Webster intended the abandonment motion and original order to include lien rights. In fact, the Bankruptcy Court itself stated: "it is pretty clear that the parties intended [to assign the lien] and the court intended it, and, if you had asked me out on the street before any motions were filed if the lien rights went along, I would have told you sure they did . . . ." The bankruptcy court subsequently entered an "Amended Order, Effective *Nunc Pro Tunc* as of the Date of Entry of the Original Order, Deeming Certain Accounts Receivable and Related Assets Abandoned and Assigned to Webster Business Credit Corporation," granting the relief requested by HLM in the motion to clarify. JBA filed a notice of

appeal on 21 June 2006.

STANDARD OF REVIEW

On appeal the district court reviews a bankruptcy court's conclusions of law *de novo*, while findings of fact are set aside only if clearly erroneous. Fed. R. Bankr. P. 8013; Deutchman v. IRS, 192 F.3d. 457, 459 (4th Cir. 1999). A bankruptcy court's interpretation of its own order is entitled to substantial deference, and where the order being interpreted is ambiguous with respect to a particular issue, the interpretation will be upheld if it is reasonable in light of the record upon which the order was based. Colonial Auto Center v. Tomlin 105 F.3d 933, 940-41 (4th Cir. 1997). The granting of *nunc pro tunc* relief is generally reviewed for abuse of discretion. See, e.g., Wells Fargo Bank of Texas, N.A. v. Sommers, 444 F.3d 690, 696 (5th Cir. 2006).

DISCUSSION

Both parties agree, as a general principle of hornbook law, that a lien follows assignment of a debt without any need of a separate assignment. Davidson v. FDIC, 44 F.3d 246, 253 (5th Cir. 1995); In re Leisure Time Sports, Inc., 194 B.R. 859, 861 (9th Cir. B.A.P. 1996). However, this general rule does not always hold true in Florida. See Hunt Truck Sales & Service, Inc. v. Holopak Village, 363 So.2d 27 (Fla. Dist. Ct. App. 1978).

The crux of JBA's case on appeal is the nonsensical argument that because HLM and Webster most certainly expected (albeit perhaps erroneously) that the right to enforce the lien would be conveyed by operation of law along with the underlying debt, then they necessarily must have intended for the bankruptcy proceeding *not* to include an assignment of the lien (that is, in the more particularized manner ostensibly required by Florida law). The Court refuses to countenance such hocus-pocus, especially where the bankruptcy court's findings of fact to the contrary must be

3

accorded substantial deference. Just as a mutual mistake of fact or law is grounds for reformation of a contract, a court of equity should be left free to clarify its prior Orders that have been frustrated by inadvertent mistake.

Of negligibly greater substance is JBA's argument that the bankruptcy court's original order cannot be deemed to have retroactively assigned the construction lien because the original motion provided insufficient notice of the debtor's intent to abandon the lien (as opposed to merely the receivable). It is undisputed that the original abandonment motion and order made no mention of the Florida construction lien, and as JBA correctly notes, adequate notice of an intent to abandon property pursuant to 11 U.S.C. § 554 necessarily requires that the property to be abandoned be specified. See, e.g., Killebrew v. Brewer, 888 F.2d 1516, 1523 (5th Cir. 1989); In re FCX, Inc., 54 B.R. 833, 839 (Bankr. E.D.N.C. 1985). Moreover, abandonment of an asset typically will not be inferred simply because it is closely related or "inextricably intertwined" with another asset the abandonment of which was properly noticed. See Battley v. Pace, 132 B.R. 644, 646 (Bankr. D. Alaska 1991).

However, JBA's argument must fail for two reasons. First, it is likely that JBA lacks standing to object to the propriety of notice and abandonment of an estate asset, where its relationship to the Debtor is that of an account debtor (debtor of the Debtor) rather than a bankruptcy creditor. See Morlan v. Universal Guarantee Life Ins. Co., 298 F.3d 609, 621 (7th Cir. 609) (section 554's notice provisions are "intended for the benefit of creditors," not "alleged violators of the debtor's legal rights"). Second, and more fundamentally, the facts of this case clearly compel the inference that any liens or other security interests tied to the account receivable were intended to be abandoned and assigned part-and-parcel. Because a lien is security for a debt, there can be no lien

in the absence of an underlying debt.  Accord Lowe's of Fayetteville, Inc. v. Quigley, 266 S.E.2d 378, 379 (N.C. Ct. App. 1980).  In other words, a lien is only an "asset" of the bankruptcy estate to the extent that it incident to a debt owed to the lienor.  Thus, it would be wholly illogical to say that the lien is an asset of the estate, the abandonment of which must be noticed separately from the abandonment of the underlying debt, when the lien has no value to anyone apart from the underlying debt.

This indisputable conclusion is not altered by any anomaly of Florida law.  Carefully read, the Hunt Truck Sales case on which JBA relies in support of its contention that "assignment of a debt to a secured lender does not automatically effect an assignment of a Florida construction lien securing the debt" does not sweep nearly so broadly.  Rather, the rule in Florida is that the *creation of a security interest in an account receivable* does not necessarily effect an assignment of the lien securing it.  See Hunt Truck Sales, 363 So.2d at 27.  In this case, however, HLM's original abandonment motion sought not to create a security interest in the receivables for Webster's benefit but rather sought to abandon outright and convey to Webster good title in "all of the rights that HLM had in everything it had" in full satisfaction of its own debts.  (Hearing Tr. at 12.)

The controlling Florida authority in this case, therefore, is not Hunt Truck Sales but rather Florida National Bank v. Phillips Center, Ltd., 555 So.2d 951 (Fla. Dist. Ct. App. 1990).  In that case, like this one, a bankruptcy court ordered certain accounts receivable of the Debtor abandoned and assigned to a bankruptcy creditor.  In that case, like this one, the Florida trial court (relying on Hunt Truck Sales) refused to allow the assignee of the receivables to foreclose on the lien securing the debt.  And in that case, like this one, the assignee sought clarification from the bankruptcy court (after the fact) that the assignment of the receivable was also intended to assign the lien and the

5

corresponding right to foreclose on the security interest. On appeal, the Florida court of appeal distinguished Hunt Truck Sales and held that the trial court should have allowed the foreclosure to proceed based on the bankruptcy court's original assignment order, noting that federal statute "confers exclusive jurisdiction on United States district courts over all of [a] debtor's property," and that the bankruptcy court's assignment order "effectively declared [the bankruptcy creditor] the successor to [the debtor's] interest in" any foreclosure action by ordering the abandonment and assignment of the receivable. Florida National Bank, 555 So.2d at 953. The court also suggested that the bankruptcy court's clarification order (the propriety of which apparently was never in question) should have removed all doubt that an assignment of the lien was intended *ab initio*.

In sum, the bankruptcy court's clarification order merely sought to accomplish what common sense, equity, and a proper application of Florida law would have allowed in the first instance. Finding no error in the manner of relief afforded by the bankruptcy court, the Order from which appeal was taken is AFFIRMED in all respects. Appellant Jonathan Bailey Associates is further directed to SHOW CAUSE why it should not be held liable for double costs and/or reasonable damages on account of prosecuting this frivolous appeal. See Fed. R. Bankr. P. 8020. As to this remaining issue, the Court will hear evidence and argument from each side at the 22 March 2007 hearing already scheduled.

      IT IS SO ORDERED.

Signed: March 5, 2007

Frank D. Whitney
United States District Judge